

Signed and Filed: August 25, 2021

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>SPEEDBOAT JV PARTNERS, LLC,<br><br>        Debtor. | Bankruptcy Case No. 20-30731-DM<br><br>Chapter 11 |

**MEMORANDUM DECISION REGARDING VALUE OF REAL PROPERTY**

I.    INTRODUCTION

On August 19, 2021, the court conducted a trial on the limited issue of the value of real estate at Kings Beach, California (the "Property") for purposes of the likely contested Chapter 11 plan confirmation to be heard soon. Michael St. James, Esq. appeared for Speedboat JV Partners, LLC ("Debtor") and Reilly D. Wilkinson, Esq. appeared for creditor Wilmington Savings Fund Society, etc. ("Wilmington").

Having considered the evidence presented by way of declarations of various witnesses, their oral testimony, and the

argument of counsel, the court finds and determines that the value of the Property as of August 19, 2021, is $8,250,000.[1]

II. THE WITNESSES

A. Darin M. Vicknair

Mr. Vicknair filed the Declaration of Darin M. Vicknair in Support of Plan Confirmation (Dkt. No. 69) on June 8, 2021. In that declaration, he identified himself as a licensed real estate broker and indicated "my opinions respecting the current value" of the Property. He attached his December 9, 2020, letter to Debtor's manager, Marc Shishido, describing the Property as "very unique" and referred to approval of a garage with living space above, a funicular access tram to the main house, additional decks and complete landscaping. None of those amenities exist today.

Mr. Vicknair stated that the Property would "currently fetch a sales price somewhere in the $15,000,000 range."

No where has Debtor shown that Mr. Vicknair possesses the requisite training, experience and credentials to qualify as an expert as to the value of the Property. It is clear from his statement, however, that he is qualified to provide a Brokers Price Opinion ("BPO"), nothing more. He offers no comparative market analysis or detail supporting what is essentially his marketing strategy. While the court respects Mr. Vicknair as a broker and occasionally does consider BPOs, his declaration and supporting letter are of no probative value for this decision.

---

[1] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

For that reason, Wilmington's request that Mr. Vicknair's declaration and testimony be excluded, as set forth in its Reply (Dkt. No. 76), is granted. The court has no further reason to rely on or make findings in connection with Mr. Vicknair's BPO.

B. Benjamin Q. Johnson

Wilmington's expert, Benjamin Q. Johnson, filed his Declaration of Benjamin Q. Johnson (Dkt. No. 67) on June 8, 2021. Mr. Johnson's declaration includes a detailed appraisal of the Property. Debtor had no objections to Mr. Johnson's qualifications other than to take issue with his so-called "qualitative" approach to analyze his comparables, in sharp contrast to its own expert's "quantitative" approach. The court previously denied Debtor's *Motion to Exclude Johnson Appraisal*. See Dkt. No. 96.

C. Joseph R. Scheidler

Debtor's expert, Joseph R. Scheidler, filed a Declaration of Joseph R. Scheidler in Support of Plan Confirmation (Dkt. No. 72) on June 8, 2021. That declaration includes a typical Uniform Residential Appraisal Report that lists the details for the Property and the usual form of appraiser's analysis of nine properties Mr. Scheidler determines to be comparable for purposes of his valuation of the Property. Comparables 8 and 9 are not reflective of consummated sales but rather listings of property. While the use of listings may now be standard among some real estate lenders and appraisers, this court finds them unreliable and of no particular value. The court has decided

-3-

not to consider those two comparables in reaching the ultimate determination here.

A major shortcoming in Mr. Scheidler's appraisal is his insistence on ascribing value to a five-car garage and finished additional sleeping quarters which he and Debtor concede do not presently exist. Even though the Tahoe Regional Planning Authority has approved the area coverage and previously issued permits (now expired) for those additions, they cannot reasonably be considered as part of the "as-is" value of the Property. While some of those permits may be perfunctory, and likely to be re-issued in the near future, they are not presently effective. Mr. Scheidler's adjustments to all of his comparables all suffered from the same flaw because the underlying premise that those comparables should be adjusted upward or downward as though the Property has the garage and the additional housing when it does not have them.

A similar but lesser problem exists regarding the pier and buoy situation that was described by Mr. Shishido. Some downward adjustment for these problems seems appropriate but Mr. Scheidler did not make them.

For these reasons, the court has serious doubts about the reliability of Mr. Scheidler's bottom line opinions as to value. It predicted as much in its *Tentative Ruling On Motion In Limine and Motion To Exclude* (Dkt. No. 94): "Mr. Scheidler's reliance on a hypothetical garage is not reason enough to disregard his opinion, although it does suggest a downward adjustment".

In addition, Mr. Scheidler conceded that Comparable 1 has a square footage of over 8,000 feet, rather than the 5,893 square feet he reports. While that discrepancy might result in a slightly lower value of the Property, the inaccuracy, while presumably inadvertent and relatively minor, does not speak well for the overall credibility of Mr. Scheidler's work and report.

D. Marc Shishido

Mr. Shishido did not offer his opinion as to value of the Property. He did, however, describe the disagreement and resulting confusion with the neighbor over the purported revocation of a license to use the pier and buoys, the current use of the pier by guests of the neighbor and the neighbor's destruction of the walkway from the Property to the pier. He also described how he accommodates handicapped guests at the Property. His explanations of those matters served to make less clear Mr. Scheidler's optimism about amenities that he treats as equivalent to some of his comparables. For sure they do not enhance the court's conclusion as to the value of the Property.

III. DISCUSSION

The challenge to the court to find a value of the Property based upon "comparables" is virtually impossible because the Property is indeed incomparable, or better yet, not comparable. To prove the point, note that the court began with the experts reporting on fifteen comparable completed sales that have closed that they considered. The two experts could not find one property that they both considered comparable even with adjustments. Only one property, 5472 North Lake Blvd, Carnelian

Case: 20-30731    Doc# 107    Filed: 08/25/21    Entered: 08/25/21 17:32:26    Page 5 of 10

Bay, CA was considered by two of the three witnesses, Mr. Scheidler and Mr. Vicknair.

Mr. Scheidler selected five of his seven that are larger than the Property; Mr. Johnson chose only one.

Mr. Johnson selected four of his eight that are in Nevada; Mr. Scheidler selected none. While the court is well aware of some of the obvious differences in the two states (local and state taxes, for example), neither expert explained why or whether those variables influence property values. If there are no meaningful differences for appraisal purposes, why did Mr. Scheidler decide not to consider even one of the more proximate Nevada properties?

Another anomaly is present in the fact that the highest priced comparable sale was $30,250,000 and the lowest was $4,816,666. How is one to feel confident about this process with a twenty-five million dollar spread?

From the examination of the detailed reports, it is obvious that certain features of the comparables are finite and not subject to subjective judgment. These include parcel size, building size, distance from the Property, length of lake frontage and most recent sale closings.

The court separated those objective factors and grouped them by the four closest comparables, in order starting with the Property (using the appraisers' own property designations), as follows:

Closest parcel sizes: LS4, LS-2, 5 and 3.

Closest in building sizes: 7, 6, LS-8 and LS-6.

Closest in distance: LS-1, LS-7, LS-5 and L6.

Closest in lakeside frontage: LS-5, 3, LS-7 and 5.

Most recent sales: 1, 2, LS-8 and LS-7.

From a review of those five categories of constants, nine of the fifteen total properties appeared not at all or once, only five appeared twice, and only one (LS-7) appeared three times.

The point of this review is to illustrate that the highly subjective variables, whether approached quantitatively by Mr. Scheidler or qualitatively by Mr. Johnson, indicate again what an imprecise and an inaccurate process this appraisal business is, particularly when it is to be exercised by a court rather than a neutral appraiser.

Taking all of that into account, the court is left with the clear impression that Mr. Johnson's approach is more reliable, albeit perhaps without the mathematical precision that one would hope for. Mr. Johnson's opinion is also more credible and leads closer to the court's ultimate determination of the value of the Property from the evidence on the record. Still, at least two powerful inferences drive the final determination upward. First, Mr. Johnson rated LS 2 as a low indicator of the value of the Property. The court discounts that opinion significantly. Regardless of its similarity in acreage, that property is twenty-two miles straight across Lake Tahoe. The two properties could not be farther apart and be on the shores of the same body of water. It stains imagination to measure it as comparable to the Property for that reason alone.

Second, the court will not ignore the beauty, apparent peacefulness, setting and overall impression of the Property. The same can said with the interior features, namely the roominess, the detail, and ambience even from a few photos. Mr. Johnson's few short paragraphs on the written page, reduced down to a few low or high indicators to predict a range of values between $6,000,000 and $6,500,000 does not do justice to the obvious value of the Property. A dose of common sense and appreciation for reality compels a valuation of at least somewhat more than Mr. Johnson's words.

Given the fiction of the hypothetical garage and sleeping quarters, the court will not reach the valuation sought by Debtor. Instead, it has reflected on Mr. Johnson's approach and concludes that his technique and methodology is preferable.

As set forth in the foregoing analysis, the court has been forced to find a way to reconcile competing opinions of two qualified experts. They both agree that the Property is unique, and no doubt would concur with Mr. Vicknair that "there are no like-kind properties offering a cookie cutter approach to determining [the property's] value". They just strongly disagree about the ultimate question presented.

Whether that shows the Property is not comparable, or that appraisal is a very inaccurate and imprecise art more than science, or both, is left for further debate.

In summary, the court draws foundation to form its judgment from both reports and finds that the Property has a present fair market value $8,250,000 as of August 19, 2021.

The court is issuing an order to that effect concurrently with this Memorandum Decision.

**END OF MEMORANDUM DECISION**

## COURT SERVICE LIST

ECF Recipients